# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHARLES ROBIN BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | 1:07CV00465 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Charles Robin Byrd, brought this action pursuant to section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security affirming the cessation of his receipt of Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## Procedural History

Plaintiff filed an application for Disability Insurance Benefits (DIB) on March 26, 1998, alleging a disability onset date of February 27, 1998. Tr. 92. After denials initially and upon reconsideration, Tr. 26, 27, a Supervisory Attorney Advisor approved Plaintiff's application by decision dated March 23, 1999, Tr. 28.

Subsequent to a mandated review, see 20 C.F.R. § 404.1589, the Social Security Administration ("SSA") notified Plaintiff that, as of August 2004, he was no

longer entitled to receive benefits, Tr. 64. After Plaintiff requested reconsideration, Tr. 67, a Disability Hearing Officer (DHO) affirmed the cessation by decision dated December 17, 2004. Tr. 73.

Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 87. Present at the hearing, held on October 11, 2006, were Plaintiff and his attorney. Tr. 538. By decision dated February 14, 2007, the ALJ determined that Plaintiff's disability ceased in August 2004. See Tr. 11. On February 11, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 6, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is no longer entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant was found to be disabled within the meaning of the Social Security Act beginning March 23, 1999.
>
> 2. The medical evidence establishes that the claimant currently has coronary artery disease.
>
> 3. The medical evidence establishes that the claimant does not have an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4. The impairments present as of March 23, 1999, the time of the most recent favorable medical decision that the claimant was disabled, were coronary artery disease, migraine headaches, and congestive heart failure.

5. The medical evidence establishes that there has been improvement in the claimant's medical impairment since August 1, 2004.

6. This medical improvement is related to the claimant's ability to work (20 CFR § 404.1594(b)(2)).

7. The medical evidence establishes that the claimant currently has an impairment or combination of impairments which is severe.

8. For the reasons set forth in the body of the decision, the claimant's testimony is not fully credible.

9. The claimant has the residual functional capacity to perform the physical exertion requirements of light work, as he is able to lift and carry up to 20 pounds occasionally, and sit, stand, and/or walk in combination for eight hours, with normal breaks (20 CFR § 404.1545).

10. The claimant is unable to perform his past relevant work as an automobile mechanic.

11. Beginning August 1, 2004 the claimant had the residual functional capacity to perform the full range of light work (20 CFR § 404.1567).

12. As of August 1, 2004, the claimant was 41 years old, which is defined as a younger individual (20 CFR § 404.1563).

13. The claimant has a high school education (20 CFR § 404.1564).

14. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

15. Section 404.1569 of Regulations No. 4 and Rule 202.21, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is no longer disabled.

16. The claimant's disability ceased on August 1, 2004 (20 CFR § 404.1594(b)(5)(vii)).

Tr. 20-21.

**Analysis**

In his brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to (I) properly support his finding of medical improvement and (ii) give controlling weight to the opinion of his treating physician. He further complains that the Appeals Council erred in (iii) failing to explain its denial of review and (iv) ignoring the "new evidence" which Plaintiff submitted after the ALJ's decision.[1] The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

---

[1] To the extent this summary is in error, it is because Plaintiff failed to follow the court's advisory to fashion his brief such that:

> [T]he pertinent facts should be identified in the argument section. The second section should state in concise fashion each of the issues for review as is done in an appellate brief. Thereafter, each such issue should be discussed in a separate section which sets out the argument for each of the issues with page citation to the record for the evidence that supports the issue, along with citation and discussion of any contrary evidence.

Docket No. 7. Plaintiff also disputes the findings of the DHO, but as that decision has already been appealed, the court has no jurisdiction to address that concern.

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

42 U.S.C. § 423(d)(1)(A).[3]

Once the decision has been made to grant a claimant benefits, there is no presumption of continuing disability, see id. § 423(f)(4); rather, that decision is subject to periodic review, see section 404.1589. The prior determination – the "comparison point decision" – is used as a reference point from which to evaluate whether any medical improvement has been realized relating to the individual's ability to work. 42 U.S.C. § 423(f). The Commissioner defines "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]

Id.

In turn, the medical improvements that are relevant to a disability determination must be those that increase an individual's functional capacity to engage in gainful activity, i.e., the ability to do basic work. Section 404.1594(b)(3), (4). To make this determination, the Commissioner employs an eight-step sequential analysis:

(1) Is the beneficiary working?

---

[3] The regulations applying section 423 are contained in the Code of Federal Regulations (C.F.R.) at Title 20, "Employees' Benefits," and all regulatory references will be thereto.

5

Case 1:07-cv-00465-TDS-WWD   Document 16   Filed 11/18/08   Page 5 of 14

(2) If not, does the impairment meet or equal a listing?

(3) If not, has there been "any" medical improvement?

(4) If medical improvement, does such improvement relate to the ability to work?

(5) If no improvement, does an exception[4] apply?

(6) If there is an improvement related to work ability, are the current impairments, alone or in combination, "severe"?

(7) If there is a severe impairment, does the beneficiary's residual functional capacity (RFC) permit performance of past work?

(8) If not, does the beneficiary have the RFC to perform other work?

Section 404.1594(f)(1)-(8). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. See id.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

---

[4] None of the "exceptions" listed in subsection (e) of the regulation are applicable hereto.

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1. Medical Improvement

Plaintiff responds, "So what?" to the ALJ's finding that his impairment did not meet a Listing, and the court agrees. As the ALJ's finding at this step was in the negative, he properly advanced to the next step.

In arguing that the ALJ did not "adequately explain the [medical] improvement he perceives," Pl.'s Br. at 2, Plaintiff claims that the ALJ found to be severe "pulmonary" artery disease, and "ignores for the most part" his coronary artery disease, id. at 3. Yet the ALJ explained first that Plaintiff's "history of myocardial infarction" continued to be a severe impairment. Tr. 17. Thereafter, the ALJ

7

performed the steps of the sequential evaluation with reference to Plaintiff's "cardiac condition."  See Tr. 18.  At the sixth step, the ALJ found that Plaintiff "continues to have a severe impairment, specifically, coronary artery disease."  Tr. 19.  In his list of conclusory "Findings," the ALJ stated that Plaintiff "currently has coronary artery disease."  Tr. 20.  Hence, the court finds this claim without basis.

Plaintiff adds that he has "never in nine years plus been free of congestive heart failure," Pl.'s Br. at 3, but the ALJ never so stated.  As noted, a previous finding of disability does not impose a presumption of continuing disability.  See 42 U.S.C. § 423(f); Crawford v. Sullivan, 935 F.2d 655, 656-57 (4th Cir. 1991); Rhoten v. Bowen, 854 F.2d 667, 669 (4th Cir. 1988).  Instead, the Commissioner must demonstrate that the termination of benefits was based on a consideration of all the evidence in the record.  See 42 U.S.C. § 423(f); Crawford, 935 F.2d at 656-57.

As to this condition, the ALJ *did* note that Plaintiff's initial disability had been granted, in part, upon his congestive heart failure ("CHF").  See Tr. 20.  But the ALJ added that, at an exam on October 22, 2003, Plaintiff denied experiencing chest pain, shortness of breath, orthopnea, paroxysmal nocturnal dyspnea, or lower extremity swelling: "In effect, the claimant reported no symptoms of left ventricular dysfunction or heart failure."  Tr. 16.  Plaintiff's consultative examination on July 26, 2004, revealed no signs of CHF.  Tr. 17 (citing Tr. 382).  In an "Attending Physician's Statement Health/Disability," Plaintiff's treating cardiologist, Dr. Peter Vassallo, did not list CHF as one of Plaintiff's diagnoses.  See Tr. 388.  At the time cessation is

8

found, there is no mention of CHF in Plaintiff's medical records. Accordingly, the ALJ did not err in not finding this condition to be severe.

Plaintiff also accuses the ALJ of ignoring that he was "experiencing three or four migraine headaches a week," Pl.'s Br. at 4, but Plaintiff's medical records do not support this allegation. Prior to his AOD, Plaintiff sought help for his migraines from neurologists and surgeons. In March 1998, he complained to his general practitioner of severe migraines. Tr. 261; see also Tr. 337. In April 1998, Plaintiff reported a migraine of "several days," Tr. 332, and was seeing an acupuncturist for help, Tr. 290.

After September 1998, however, there is no mention of migraine difficulty save for a brief period from late 2002 through early 2003, see Tr. 323-30, and this period does not satisfy the Act's durational requirement, see section 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). There is no record of Plaintiff again seeking help for a migraine headache until March *2007*. Further, Plaintiff did not complain to Dr. Zota, the consultative examiner, of problems with headaches. See Tr. 381, 382 ("No headache or eye problems."). Thus, the record supports the ALJ's decision not to find Plaintiff's migraines to be a severe impairment at the time of cessation.

9

2. Treating Physician's Opinion

The regulations require that all medical opinions in a case be considered, section 404.1527(b), but treating physician opinions are accorded special status, see section 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (internal citation omitted)).

Plaintiff refers to Dr. Vassallo's October 2003 exam records and his "Attending Physician's Statement," and notes that neither "allude to any improvement in his condition." Pl.'s Br. at 3. Yet it is not the caregiver's role so to state. See section 404.1527(e) (refusing to "give any special significance" to opinions on issues reserved to the Commissioner because they "are administrative findings that are dispositive of a case"). Dr. Vassallo *did* observe in September 2003 (as noted by the ALJ, Tr. 16) that "[t]he indication for Coumadin right now is not very strong," as Plaintiff had been in sinus rhythm and there was no evidence of deep venous thrombus. Tr. 375.

In October, Dr. Vassallo noted that, prior to his September visit, Plaintiff had not been in his office since January 2001.[5] Tr. 374. Cf. Johnson v. Barnhart, 434

---

[5] Plaintiff attempts to explain his lack of medical records from September 12, 1998, through most of 2002, by contending that he had no health insurance and was
(continued...)

10

F.3d 650, 658 (4th Cir. 2005) (the failure to seek help constitutes a reason for discounting subjective claims). The doctor wrote that Plaintiff was actually working, "not having any specific problems," and was not taking *any* medication. Tr. 374. Accordingly, Dr. Vassallo prescribed only medication for "cardioprotection." Id.

Further, Dr. Vassallo's November 2003 statement does not further Plaintiff's complaint. The doctor specifically opined that Plaintiff had only "[m]oderate limitation of functional capacity," and could perform "light work," limited only in "no heavy lifting or stress" and "no over exertion." Tr. 388-89. As the DHO found Plaintiff incapable of even sedentary exertion, Tr. 75, this statement – from Plaintiff's treating cardiologist – clearly indicates an improvement in Plaintiff's medical condition.

Plaintiff argues that, while Dr. Zota rated Plaintiff's status as NYHA Class I to II, Dr. Vassallo rated him at Class III. But it is the duty of the ALJ, and not this court, to resolve conflicts in the evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). That said, although the ALJ cited Dr. Zota's recommendation, the ALJ's final RFC decision is actually closer to the opinion of Dr. Vassallo that Plaintiff has moderate limitation of functional capacity and is capable of light work, than it is to Dr. Zota's opinion that Plaintiff's impairment "does not affect his ability to sit and stand."

---

⁵ (...continued)
incarcerated. But Plaintiff testified that he *did* have insurance and currently had Medicare. Tr. 542-43. Further, Plaintiff's brief states that he was incarcerated only from August 24, 2001, through November 20, 2002. Not only did Plaintiff not testify as to these dates, see Tr. 556, this information is not to be found in the record. In addition, the ALJ indicated, and Plaintiff affirmed, that he received medical care in prison. Id. Although Plaintiff would have had medical records attesting to same, there are none in the transcript.

11

Tr. 383. Significantly, Dr. Vassallo never opined that Plaintiff was not capable of working. Thus, the court finds no merit to Plaintiff's argument.

Plaintiff also refers to the records of Dr. Patrick Simpson, but as this doctor did not start treating Plaintiff until September 2006, some two years after his cessation determination, Dr. Simpson's opinions are not relevant to the case sub judice. See discussion at Issue 3, infra.

3. New Evidence

Plaintiff next attempts to rely on records dated August 2006 and thereafter, but the court notes that these records post-date the cessation finding by at least two years. SSA's position is that, "[i]n deciding the appeal of [the] cessation determination, the [Commissioner] considers what the claimant's condition was *at the time of the cessation determination,* not the claimant's condition" thereafter. Acquiescence Ruling 92-2(6), "Scope of Review on Appeal in a Medical Cessation of Disability Case – Title II of the Social Security Act," 57 Fed. Reg. 9262, 9264 (Mar. 17, 1992). Accordingly, these records, and all of those subsequently submitted to the Appeals Council and to SSA's Assistant Regional Counsel, are not relevant to this court's review. Plaintiff's remedy with regard to this period was a new application. See id.

4. Appeals Council

Plaintiff objects that the Appeals Council failed to explain why it denied review.

But the court agrees with the Seventh Circuit Court of Appeals which, in rejecting a similar argument, explained:

> The rationale for requiring articulation of the Secretary's assessment of evidence is "to permit an informed review" in the Appeals Court. <u>Bauzo v. Bowen</u>, 803 F.2d 917, 923 (7th Cir. 1986). When the Appeals Council denies review in accordance with its discretion under [section 404.967], the rationale for requiring articulation of its reasoning is absent, since the denial is not subject to judicial review - if the Appeals Council denies a request for review, the ALJ's decision becomes the final decision of the Secretary, <u>see</u> [section 404.981], and judicial review is available only for final decisions of the Secretary. <u>See Califano v. Sanders</u>, 430 U.S. 99, 108, 97 S. Ct. 980, 986, 51 L. Ed. 2d 192 (1977). . . . Since the Appeals Council's denial of a request for review is not subject to judicial review and the applicable regulations do not require an explanation of the grounds for rejection, we hold that the Appeals Council may deny review without articulating its reasoning.

<u>Damato v. Sullivan</u>, 945 F.2d 982, 988-89 (7th Cir. 1991). Thus, the Appeals Council committed no reversible error. Moreover, as discussed hereinabove, because all of the evidence that Plaintiff alleges the Appeals Council "ignored" post-dates the date of cessation, none of it would be relevant to the case at hand. Accordingly, any error on the part of the Appeals Council would therefore be harmless.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence, and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (pleading

13

no. 10) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (pleading no. 13) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

November 18, 2008